UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                                PLAINTIFF

v.                                                               CASE ACTION NO: 3:20-cv-729-CRS
                                                                                  *Electronically filed*

FIVE THOUSAND NINE HUNDRED
DOLLARS IN UNITED STATES
CURRENCY ($5,900.00)                                                                    DEFENDANT

**VERIFIED COMPLAINT
FOR FORFEITURE IN REM**

The United States of America, by counsel, Russell M. Coleman, United States Attorney for the Western District of Kentucky, and Amy M. Sullivan, Assistant United States Attorney, brings this complaint and alleges as follows:

**NATURE OF THE ACTION**

1. This is an action to forfeit and condemn to the use and benefit of the United States of America the following property: Five Thousand Nine Hundred Dollars ($5,900.00) in United States currency.

**JURISDICTION AND VENUE**

2. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant property under 21 U.S.C. § 881(a)(6). This Court has jurisdiction over forfeiture actions commenced by the United States pursuant to 28 U.S.C. § 1345 and 28 U.S.C. § 1355(a).

3. This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b). Upon filing this complaint, the plaintiff requests that the Court issue an arrest warrant

*in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1355 and 1395, because the defendant property was found in the Western District of Kentucky and because the acts or omissions giving rise to the forfeiture occurred in this district.

## THE DEFENDANT IN REM

5. The defendant is: Five Thousand Nine Hundred Dollars in United States Currency ($5,900.00). On or about May 11, 2020, Agents with the Drug Enforcement Agency and the Louisville International Police seized this property from Merttay Robertson located at the Louisville International Airport, 600 Terminal Drive, Louisville, Kentucky 40209, while executing a consensual search. The Drug Enforcement Administration ("DEA") began administrative forfeiture proceedings against this property, during which Merttay Robertson filed the only claim (received by DEA on or about August 4, 2020). The defendant property is currently in the custody of the United States Marshals Service.

## THE LAW

6. The defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes: 1) money, negotiable instruments, securities and other things of value furnished and intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act (21 U.S.C. §§ 841 and 846); 2) proceeds traceable to such an exchange; and 3) money, negotiable instruments, and securities used and intended to be used to facilitate a violation of the Controlled Substances Act.

## SUMMARY OF RELEVANT FACTS

7. The facts and circumstances supporting the seizure and forfeiture of the defendant property are set forth in the affidavit of Eric D. Thompson, Task Force Officer, Drug Enforcement Administration, which is attached hereto as Exhibit "A", and incorporated in its entirety herein by reference.

## CLAIM FOR RELIEF

8. The defendant property is money furnished or intended to be furnished in exchange for a controlled substance (or traceable thereto) and/or represents money used or intended to be used to facilitate a violation of the Controlled Substance Act. Consequently, the defendant property is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the plaintiff respectfully requests:

1. that the Court issue a warrant for the arrest and seizure of the defendant property;

2. that notice of this action be given to all persons known or thought to have an interest in or right against the property;

3. that the defendant property be forfeited and condemned to the United States of America;

4. that the plaintiff be awarded its costs and disbursements in this action; and

5. for such other and further relief as this Court deems proper and just.

Respectfully submitted,

RUSSELL M. COLEMAN
United States Attorney

s/Amy M. Sullivan
AMY M. SULLIVAN
Assistant U.S. Attorney
Western District of Kentucky
717 West Broadway
Louisville, KY 40202
(502) 582-5911
(502) 582-5097 (fax)
amy.sullivan@usdoj.gov

## VERIFICATION

I, Eric D. Thompson, am a Task Force Officer with the Drug Enforcement Administration. I have read the foregoing Verified Complaint for Forfeiture *In Rem* (including any attachments thereto) and under penalty of perjury, hereby assert that the facts contained therein are true to the best of my knowledge and belief, based upon knowledge possessed by me and/or on information received from other law enforcement agents.

Eric D. Thompson, Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me this 30th day of Oct, 2020

Notary Public
My Commission expires: 11/29/2022

4

# AFFIDAVIT IN SUPPORT OF FORFITURE COMPLAINT

I, Eric D. Thompson, having been duly sworn, dispose and state:

I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

1. Affiant has been employed by the Louisville International Airport Police Department as a Peace Officer since 2008, and have been assigned to the Drug Enforcement Administration (DEA) as a Task Force Officer since 2018. Affiant is currently assigned to the Louisville District Office's Airport Interdiction Unit. In connection with my official DEA duties, I investigate criminal violations of state and federal narcotics laws, including, but not limited to violations of Title 21, United States Code, Sections 841, 843, 846, and 848. Affiant has received specialized training in the enforcement of laws concerning controlled substances as found in Title 21 of the United States Code. Affiant has testified in judicial proceedings and prosecutions for violations of controlled substances laws. Affiant also has been involved in various types of wire surveillances, and in the debriefing of defendants, witnesses and informants, as well as other who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from drug trafficking.

2. Affiant has received training in investigations and has participated in investigations involving the interception of wire communication devices. Affiant is familiar with the way in which drug traffickers conduct their business, including, but not limited to, their methods of importing and distributing controlled substances, their use of telephones and digital display paging devices, and their use of numerical codes and code words to conduct their transactions. Affiant is familiar with, and has participated in all the normal methods of investigation, including, but not limited to, visual surveillance, the general questioning of witnesses, the use of informants, the use of pen registers and undercover operations.

3. Through may training and experience as a Task Force Officer, and through contacts with other agencies, I know that persons involved in the sale of illegal controlled substances commonly utilize commercial air carriers (such as American Airlines, United Airlines, Southwest Airlines) to transport drug proceeds to source states to purchase said controlled substances. Traffickers will often travel with one or more people to spread out the proceeds among the travelers in an effort to prevent seizure and detection of large amounts of cash. Through training and experience, affiant knows that is also common for traffickers and currency launders to transport large amounts of U.S. Currency to what the affiant knows to be source states for controlled substances. Usually these states are on the west coast (such as California) who have

Complaint Exhibit A

legalized marijuana and are close to the Mexico border. The traffickers then transport controlled substances back to the east coast through a variety of methods, including but not limited to shipments via commercial package carriers.

As set forth more fully below, based upon information provided to me and/or first-hand knowledge, Affiant states there is reasonable and probable cause to believe that money seized from Merttay P. ROBERTSON Jr, constitutes proceeds traceable to narcotics trafficking and/or intended for narcotics trafficking.

### Facts of the Case

4. To briefly summarize this case, two men were found to have large amounts of cash while being screened at the TSA security checkpoint at the Louisville International Airport. One man had marijuana (later determined to be approximately 20 grams) and $25,773.00 (which had a strong odor of marijuana) and was temporarily detained, and the marijuana and currency were seized as drug proceeds. TSA screening revealed another man had what was later determined to be $5900, but cleared the screening before the first man cleared. TSA officials noticed that the two men appeared to be traveling together and identified the second man to law enforcement, who was later located and questioned, after which the $5900, which also had strong odor of marijuana, was seized as for forfeiture as drug proceeds. Both men denied traveling with anyone, yet they were later determined to be cousins who were flying on the same departing flight, both with ultimate destination to the state of California. A more detailed description of the events follows.

5. On May 11th, 2020, at approximately 7:00 a.m., members of the Louisville Division Office Airport Interdiction Unit (AIU) received information from the Louisville International Airport Police (LIAPD) pertaining to a subject detained at the TSA security checkpoint at the Louisville International Airport with drugs and a large amount of U.S. Currency. LIAPD Major Grimes relayed to TFO Eric D. Thompson that a male being detained was flying to Los Angeles via American Airlines flight #2424 from Louisville International (SDF) to Dallas/Ft. Worth International Airport, with his final destination being Los Angeles, CA. Major Grimes explained further that the male, identified as Cedric BINFORD, had been found to be in possession of a large sum of U.S. Currency and suspected marijuana, as he was proceeding through TSA inspection. TFO Thompson then contacted SA Cates and requested his assistance concerning this incident. While enroute to the Louisville International Airport, SA Cates learned from the LIAPD that a second unidentified individual, who had already passed through TSA screening, was believed to be traveling with BINFORD, and also had a large sum of U.S. Currency on his person.

6. At approximately 7:40 a.m., SA Michael Cates arrived at the Louisville International Airport TSA checkpoint and met LIAPD Officers Michael Simms and Taylor

Logsdon, who were with a male seated near one of the TSA inspection tables. On an adjacent table were personal items, to include a soft sided luggage case and a backpack. In one of the opened bags on the inspection table, SA Cates observed a large rubber-banded stack of U.S. Currency, containing multiple smaller stacks of rubber-banded U.S. Currency. Additionally, SA Cates observed a small baggie containing suspected marijuana. SA Cates noted that a strong scent of marijuana permeated BINFORD's bags and personal items.

7. SA Cates identified himself to BINFORD as a law enforcement officer and presented his DEA credentials to BINFORD. SA Cates asked the individual his name, to which the male responded that his name was Cedric BINFORD. SA Cates then asked BINFORD where he was traveling that day, to which BINFORD replied he was flying back to his home in Los Angeles, CA. BINFORD told SA Cates that he had been in Louisville for Mother's Day and was working in Los Angeles as a landscaper. SA Cates asked BINFORD if he was traveling alone to which he stated yes. SA Cates then asked BINFORD how much money he had, to which he replied about "25" ($25,000) and that an additional amount of money was in another carry-on bag, different from the one that the first amount of U.S. Currency was found. SA Cates asked BINFORD if Officer Logsdon could search the bag for the money, to which BINFORD consented to the request. While searching through the bag, Officer Logsdon found additional rubber-banded stacks of U.S. Currency. While speaking to SA Cates, BINFORD also stated that he had additional money on his person, at which time he produced from his pants pocket an additional quantity of U.S. Currency. BINFORD gave no explanation for the large sum of money located on his person and in his carry-on bags. BINFORD is approximately 23 years old.

8. TFO Eric D. Thompson then arrived at the TSA security checkpoint. SA Cates asked BINFORD how long he had been living in Los Angeles, to which he replied about one month. BINFORD stated that while he was living in Los Angeles, he had been living in hotels and Airbnb's, and paying approximately $600 a week. BINFORD was unable to provide more information concerning the landscaping job in Los Angeles. BINFORD told SA Cates that prior to moving to Los Angeles, he had also worked in Louisville at Logan's Uniforms, as well as at a McDonald's restaurant.

9. SA Cates then told BINFORD that the U.S. Currency found in his bags and on his person, were being seized as they were believed to be drug trafficking proceeds. SA Cates then placed the U.S. Currency recovered from his bags and his person into DEA SSEE #M000418514 as witnessed by TFO Eric Thompson. SA Cates then provided BINFORD a DEA 12 receipt for the U.S. Currency and explained to BINFORD the process for appealing the seizure. Subsequent to this, TFO Thompson issued BINFORD a Jefferson County Citation for Possession of Marijuana. TFO Thompson took custody of the suspected marijuana and later processed the marijuana

Complaint Exhibit A

as evidence per LIAPD regulations. Subsequent to receiving the Citation, SA Cates and TFO Thompson parted ways with BINFORD as he completed his screening process with TSA at the checkpoint.

10. SA Cates and TFO Thompson then proceeded to gate B18 to attempt to contact the second individual that had passed through TSA inspection after BINFORD. TSA gave agents information that this passenger was also found during TSA screening to be in possession of a large amount of U.S. Currency. Additionally, this second individual was observed by TSA personnel and LIAP Officer Sims to be seated in the area after leaving TSA screening for approximately 20 minutes and appeared to observe the TSA and LIAPD interaction with BINFORD. The TSA personnel did not observe the second individual meet with anyone else, and travelers going through TSA screening were very few. This led TSA personnel to believe the second individual was traveling with BINFORD. SA Cates and TFO Thompson were then provided with a description for the second individual by LIAP personnel and TSA (including a still shot from airport surveillance camera). It was noted that the second individual was traveling on the same flight as that being taken by BINFORD (American Airlines Flight #2424 to Dallas/Ft. Worth).

11. SA Cates and TFO Thompson approached Gate B18 and learned that most passengers had already boarded the flight. No individuals matching the description for the second individual were observed by SA Cates and TFO Thompson in the gate seating area, leading the investigators to believe that the second individual was on board the aircraft. Accordingly, SA Cates and TFO Thompson boarded American Airlines Flight 2424 and located an individual matching the description provided by TSA of the second individual. SA Cates approached the seated individual, presented his DEA credentials and identified himself as a law enforcement officer. SA Cates then asked the individual if he would speak to SA Cates and TFO Thompson in the jet way, to which the individual agreed.

12. Upon exiting the plane, SA Cates asked the individual if he had any identification, to which the individual produced an expired Commonwealth of Kentucky Driver's License (number omitted) for Merttay Peregrine ROBERTSON Jr., with an address on Peabody Lane in Louisville, KY (full address omitted). ROBERTSON is approximately 21 years old. SA Cates told ROBERTSON that they were conducting drug interdiction activities that day at the airport. SA Cates asked ROBERTSON where he was flying to that day, to which ROBERTSON stated Ontario, CA. SA Cates then asked ROBERTSON if he was carrying any large amounts of U.S. Currency. ROBERTSON replied that he was and produced a large handful of U.S. Currency from his jacket pocket. SA Cates asked ROBERTON how he had come by the money, to which ROBERTSON responded that he had earned the money from working at General Electric (GE) in Louisville. SA Cates asked ROBERTSON how long he had been working at GE, to which he responded approximately 4 months. SA

Complaint Exhibit A

Cates asked ROBERTSON how much he earned while at GE, to which ROBERTSON responded that he initially earned $15.50 an hour, but it has increased to $18 an hour in response to the Coronavirus outbreak. SA Cates then asked ROBERTSON what the purpose of his travel was, to which ROBERTSON stated that he was going to California for vacation. When asked by SA Cates as to where he was staying while in California, ROBERTSON replied that he was staying with an uncle, he identified as Jonathon Stone, who lives in the Ontario, CA area. SA Cates asked ROBERTSON if he kept the U.S. Currency found on his person in a bank, to which ROBERTSON stated he just kept the money himself. SA Cates asked ROBERTSON if he was traveling alone, to which ROBERTSON stated he was. Subsequent to this, SA Cates told ROBERTSON that the U.S. Currency found on his person was going to be seized as suspected drug trafficking proceeds. TFO Thompson placed the U.S. Currency recovered from ROBERTSON's person into DEA SSEE #S001289501, as witnessed by SA Cates. Prior to the SSEE's sealing, ROBERTSON signed the SSEE as owner/possessor. After that, SA Cates sealed the SSEE as witnessed by TFO Thompson. TFO Thompson then provided ROBERTSON a DEA 12 receipt for the seized U.S. Currency. SA Cates then explained to ROBERTSON the process by which he could appeal the seizure. Subsequent to this, SA Cates and TFO Thompson parted ways with ROBERTSON, who re-boarded American Airlines flight 2424. SA Cates and TFO Thompson later learned from American Airlines personnel that BINFORD had also boarded the same flight to Dallas/Ft. Worth.

13. SA Cates and TFO Thompson then transported Exhibit N-1 inside SSEE #M000418514 and Exhibit N-2 inside SSEE #S001289501 to the Louisville DO where it was placed into the Temporary High Value Storage Vault by TFO Thompson as witnessed by SA Cates.

14. On May 12th, 2020, TFO Nick Presley and K9 "Maya" performed an open air sniff on Exhibits N-1 and N-2 within the LDO office. K9 Maya is a certified and reliable narcotics K9, and is a North America Police Working Dog Association certified K9, with her last certification on May 11 of 2020. K9 "Maya' was also certified with Louisville Metro Police Department on December 11 2019. K9 "Maya" showed a positive alert to the presence of the odor of narcotic on both the exhibits. Additionally, on May 12th, 2020, TFO Thompson reviewed airport surveillance camera footage and located both BINFORD and ROBERTSON arriving at the Louisville Airport. It appeared that BINFORD and ROBERTSON arrived approximately 20 minutes apart. Also during his review, TFO Thompson witnessed BINFORD and ROBERTSON make eye contact and nod to BINFORD while he was in the process of his secondary screening and ROBERTSON was passing through the screening lane.

15. During additional investigation, TFO Thompson located both BINFORD and ROBERTSON on the social media website FACEBOOK. Both BINFORD and

Complaint Exhibit A

ROBERTSON had a public account where it was found that they attended Fern Creek High School together. BINFORD also had ROBERTSON listed on his profile as being a cousin under the "ABOUT" tab, where it lists family members. It was also learned that ROBERTSON's mother was found to be BINFORD's aunt. Further investigation by Intelligence Analyst William Hickman, through federal subpoenas requests for information, revealed that BINFORD and ROBERTSON were in contact with each other telephonically 111 times during the days prior to the consensual encounter's at the Louisville International Airport.

16. On May 12th, 2020, SA Cates and TFO Thompson took custody of Exhibits N-1 and N-2 from Louisville DO Evidence Technician Thomas Lance and transported the exhibits to Loomis where an official count was made, totaling $25,773.00 U.S.C. for Exhibit N-1 and $5,900.00 U.S.C. for Exhibit N-2. During this process, Loomis staff made several comments that Exhibits N-1 and N-2 were emitting a strong odor of marijuana

17. Several accumulating factors led Agents/Officers to establish probable cause that the U.S. Currency which Cedric BINFORD and Merttay ROBERTSON carried were proceeds from drug-related activities. These accumulating factors include:

    a. BINFORD had suspected marijuana in his possession during his screening at the TSA screening process.

    b. BINFORD gave limited information after being asked as to his landscaping job in Los Angeles as well as the limited information as to his living arrangements in Los Angeles.

    c. BINFORD and ROBERTSON addresses that appear on their Kentucky Driver's Licenses were found to be approximately 3.5 miles away from each other during a GOOGLE map search.

    d. During a search of law enforcement databases, BINFORD was found to have been charged with the possession of Marijuana in 2019.

    e. Both BINFORD and ROBERTSON were found to be lying that they were traveling alone.

    f. BINFORD and ROBERTSON were found to be related as first cousins.

    g. BINFORD and ROBERTSON were traveling to a source state for controlled substances, that being California, as well as source cities being Ontario and Los Angeles.

Complaint Exhibit A

    h. K9 Maya positive alert to the presence of the odor of narcotics on both Exhibit N-1 and N-2.

    i. DEA Analyst William Hickman located three numbers subscribed to BINFORD. The subscriber information for all three is the same, Cedric J. BINFORD JR, with the same address on Applegrove Ln., Louisville, KY, and they are all AT&T.

    j. Phone 1 subscribed to BINFORD was in contact approximately 41 times between 4/22/20 to 5/7/20 with a phone number known to be subscribed to ROBERTSON.

    k. Phone 2 subscribed to BINFORD was found to be in contact with ROBERTSON's phone number approximately 11 times between 4/14/20 to 5/9/20.

    l. Phone 3 subscribed to BINFORD had no known calls or texts between 4/11/20 to 5/10/20 with ROBERTSON's phone.

    m. ROBERTSON was very vague as to the exact reason for his vacation to California during a worldwide pandemic.

    n. BOTH BINFORD and ROBERTSON were not outwardly upset after learning their money was going to be seized as suspected drug proceeds.

18. DEA started administrative forfeiture proceedings against the seized currency and sent notice to BINFORD and ROBERTSON. BINFORD did not file an ownership claim to the currency contesting the forfeiture, but did ask DEA for remission of the forfeiture. ROBERTSON filed an ownership claim to the defendant currency, contesting the forfeiture. In support of his claim ROBERTSON attached bank records from January 2019 to June 2020 (except there were no statements from March and May of 2019). At the airport, ROBERTSON stated that the money he possessed on his person was from his job at GE which he said he had been working for about 4 months. After reviewing the supplied banking records from ROBERTSON claim, only three (3) deposits came from Haier via direct deposit (which has a contract with GE)—these deposits occurred on April 24, May 1, and May 15 and totaled $834.22. ROBERTSON also received several tax refunds. Doordash and Postmates deposited some small amounts of money. The banking records provided by ROBERTSON in his claim are otherwise not complete enough to determine whether a legitimate origin exists for the deposits. The banking records do show several large withdrawals and deposits with no descriptive origin.

Complaint Exhibit A

ROBERTSON maintained small account balances by month's end, with some months incurring insufficient funds fees.

19. The records show that ROBERTSON uses multiple cash APPS to move money in and out of his account. The affiant knows that drug traffickers use alternative methods such as mobile phone applications to hide evidence of drug proceeds from law enforcement as well as to conceal money transactions from banks and hand to hand transactions. For the time period for which records were provided, his bank account was primarily (but not exclusively) funded with ATM cash deposits and various cash APP deposits. Some of those cash deposits occurred on the same day (in multiple deposits) and consecutive days. ROBERTSON would also frequently make cash withdrawals after the cash ATM deposits (which would occur on the same day as the cash initial cash deposit, the next day, or within several days). These records also show that ROBERTSON usually deposited money into his CHASE account via ATM deposit. The affiant knows that this behavior sometimes aids traffickers and money launderers in concealing drug proceeds and being flagged by bank personnel. ROBERTSON also attached a letter showing a purported settlement for an injury from 2019, for which he purportedly received approximately $2880.55. The document was signed on April 1, 2020. No corresponding check deposit was found in the records ROBERTSON provided.

20. According to Courtnet, ROBERTSON has no criminal history as an adult (other than traffic violations). According to Courtnet, ROBERTSON's father has been on felony probation since 2019 for trafficking in marijuana, in Nelson County Circuit Court Case No. 19-CR-00239. Your affiant confirmed this information with KSP and reviewed some investigative materials. On January 24th, 2019, United States Postal Inspector Kristi Parkerson intercepted a package from Stockton, California, to an address in Nelson County, KY. This address was later found be the residence of ROBERTSON's father. Upon the execution of a Federal Search Warrant by P.I. Parkerson, the package was found to contain 1 pound of marijuana. Postal Inspector Parkerson forwarded the case to Detective Seth Lee with the Greater Hardin County Drug Task Force, who had jurisdiction in Nelson County. U.S.P.I., GHCNTF, KSP, and Nelson County Sheriffs Department conducted a controlled delivery where ROBERTSON's father arrived and collected the package. The investigating agencies then executed a Kentucky State search warrant on ROBERTSON's father's house. Upon the search of the residence, over five pounds of marijuana, drug paraphernalia, approximately $34,000.00 in U.S. Currency (believed to be drug proceeds), and several firearms were located within the residence. ROBERTSONS father was charged with trafficking Marijuana over 5 pounds, Possession of Drug Paraphernalia, and Acquire Property/Invest with income form Trafficking in Controlled Substances, and taken to the Nelson County Jail. On November 8th, 2019, ROBERTSON's father pled guilty to Trafficking Marijuana over 8oz but less then 5Lbs, and possession of Drug Paraphernalia. ROBERTSON's father was given five years of probation. The

Complaint Exhibit A

affiant knows through training and experience that drug traffickers and money launders commonly use and employ family members to transport currency and controlled substances in order to conduct transactions. Affiant also knows that it is common practice for traffickers to send family members to source states to conduct drug transactions.

## Conclusion

There is probable cause to believe that the defendant property listed above and in the Complaint is subject to forfeiture to the United States, as proceeds directly and indirectly traceable to drug trafficking (both facilitating and proceeds thereof) and property intended to be furnished for controlled substances, in violation of 21 U.S.C. § 841 et seq. Consequently, the property is subject to forfeiture under 21 U.S.C. § 881(a) (6).

AFFIANT FURTHER SAYTH NOT

*[Signature: Eric D. Thompson]*

Task Force Officer Eric D. Thompson

Drug Enforcement Administration

Complaint Exhibit A

✎JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
UNITED STATES OF AMERICA

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

## DEFENDANTS
FIVE THOUSAND NINE HUNDRED DOLLARS IN U.S. CURRENCY

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [x] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question (U.S. Government Not a Party)
- [ ] 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☒ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 330 Federal Employers' Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / **Habeas Corpus:** |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 530 General |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty |  |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other |  |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 440 Other Civil Rights / ☐ 550 Civil Rights |  |  |  |
|  | ☐ 555 Prison Condition |  |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
21 U.S.C. 881(a)(6)

Brief description of cause:
drug related seizure of property

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: 10/30/20

SIGNATURE OF ATTORNEY OF RECORD: Amy M. Sullivan (Digitally signed by Amy M. Sullivan, Date: 2020.10.30 10:57:28 -04'00')

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction**. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit**. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin**. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.** **Cause of Action**. Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity**. Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint**. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases**. This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**. Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA

PLAINTIFF

v.    CASE ACTION NO: __3:20-cv-729-CRS_____
*Electronically filed*

FIVE THOUSAND NINE HUNDRED DOLLARS
IN UNITED STATES CURRENCY ($5,900.00)

**WARRANT OF ARREST *IN REM* AND NOTICE**

TO:  THE UNITED STATES DRUG ENFORCEMENT ADMINISTRATION
AND/OR ANY OTHER DULY AUTHORIZED LAW
ENFORCEMENT OFFICER:

WHEREAS the United States Attorney for the Western District of Kentucky has filed a Verified Complaint for Forfeiture *In Rem* against the above-named defendant property on the 30th day of October, 2020, alleging that the defendant property is subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

And, the Court being satisfied that, based on the Verified Complaint for Forfeiture *In Rem*, there is probable cause to believe that the defendant property so described therein constitutes property that is subject to forfeiture for such violations, and that grounds for issuance of a Warrant of Arrest *In Rem* exist, pursuant to Supplemental Rule G(3) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules");

YOU ARE THEREFORE ORDERED to seize and arrest the defendant property, and to take the defendant property into your possession for safe custody, until further order of the Court; and to make your return as provided by law.

YOU ARE FURTHER ORDERED to send notice to the record owner and any other person believed to have a claim to or interest in the defendant property a copy of the Complaint, Notice of Forfeiture, and this Warrant in a manner consistent with the principles of service of process of any action *in rem* under the Supplemental Rules and the Federal Rules of Civil Procedure, within a reasonable time of seizure, and, to admonish any persons holding a claim to the defendant property to file their claims with the Clerk of this Court within thirty-five (35) days after execution of this process, and to serve their answers within twenty-one (21) days after filing their claims, and finally, that they must serve a copy of any claim and/or pleading upon the Assistant United States Attorney, Amy M. Sullivan, 717 West Broadway, Louisville, Kentucky 40202.

YOU ARE FURTHER ORDERED, in the event that the defendant property is not released within ten (10) days of execution of process, that you shall cause publication of public notice, as required by Rule G(4) of the Supplemental Rules.  Such notice shall be published for thirty days at www.forfeiture.gov.  This notice shall state that anyone claiming an interest in the defendant property must file: 1) a claim within sixty (60) days from the start of the publication on the internet at www.forfeiture.gov; and 2) an answer within twenty-one (21) days after filing a claim.

IT IS FURTHER ORDERED that, promptly after execution of this process, you shall file the same in this Court with your return thereon, identifying the individuals upon whom copies were served and the manner employed.

Tendered by:
Amy M.   Sullivan
Assistant United States Attorney
717 West Broadway
Louisville, KY 40202
(502)582-5911
(502)582-5097(fax)
amy.sullivan@usdoj.gov

cc: United States Attorney (AMS) - two certified copies of order and two certified copies of the Verified Complaint